Henry Maxwell Evans II – Plaintiff pro se
13605 E. Bulah Ave.
Parlier, CA 93648
(510) 680-6147
henry.ii@comcast.net



FILED

MAY – 8 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

HENRY MAXWELL EVANS II,

**Plaintiff pro se,**

vs.

PRESTON GILMORE individually and in his official capacity as Division Manager for Children and Family Services Bureau; SAVANNAH McKENZIE individually and in her official capacity as Supervisor for Children and Family Services Bureau; MELISSA CONNELLY individually and in her official capacity as Supervisor for Children and Family Service Bureau; DONNA THORESON individually and in her official capacity as Supervisor for Children and Family Services Bureau; CLARENCE JOHNSON individually and in his official capacity as Emergency Response Worker for Children and Family Services Bureau; **RODNEY HARVEY** individually and in his

CASE NO: **C17- 2645**

**COMPLAINT FOR DAMAGES**

**(42 U.S.C. § 1983)**

**(California Civil Code § 51)**

**DEMAND FOR JURY TRIAL**

Complaint - 1

official capacity as Social Worker Intern for Children and Family Services Bureau; **STAN COOPER** individually and in his official capacity as Social Worker for Children and Family Services Bureau; **CONTRA COSTA COUNTY** a municipal corporation; **MARK GAGAN** individually and in his official capacity as Sergeant for the Richmond Police Department; **GREG GIBSON** individually and in his official capacity as Detective for the Richmond Police Department; **DOES** 1-9 inclusive; and **CITY OF RICHMOND** a municipal corporation.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Defendants**

## JURISDICTION

1. This action arises under 42 U.S.C. § 1983. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331, 1343(a) (1) & (3), and § 1367(a).

## INTRADISTRICT ASSIGNMENT

2. Venue is proper and convenient in the Northern District of California, Oakland Division pursuant to 28 U.S.C. 1391(b) in that the alleged claims arose in the City of Richmond, State of California.

## PARTIES

3. Plaintiff, Henry Maxwell Evans II, is a competent adult and is a person with standing to bring this action for the violation of her constitutional rights under 42 U.S.C. § 1983. Plaintiff, Henry Maxwell Evans II, does hereby bring this action on her own behalf.

4. Plaintiff, Henry Maxwell Evans II, is of African American descent.

5. Defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Clarence Johnson, Rodney Harvey and Stan Cooper were at all times relevant to this action as officers of the Contra Costa County Children and Family Services Bureau, a Division of the Contra Costa County Department of Health and Human Services. All defendants identified in this Paragraph are being sued in their individual and official capacities.

6. Defendant Contra Costa County is, and at all times relevant to this action was, a municipal corporation duly organized and existing under the laws of the State of California.

7. Defendants Mark Gagan and Greg Gibson were at all times relevant to this action officers of the Richmond City Police Department. All defendants identified in this Paragraph are being sued in their individual and official capacities.

8.     Defendants DOES 1-9 are unknown by true name and/or capacities. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs will allege the Defendants DOES 1-9 and each of them are legally responsible for their intentional and unreasonable violation of and reckless disregard for the Constitutional and statutory rights of the Plaintiffs.

9.     Defendant CITY OF RICHMOND is, and at all times relevant to this action was, a municipal corporation duly organized and existing under the laws of the State of California.

## STATEMENTS OF FACTS

10.     On January 29, 2002, defendant Rodney Harvey, a Contra Costa County Social Worker, visited the Plaintiff's family's residence, for the third time, to drop off a copy of the Voluntary Family Maintenance plan which was promised to Charles Evans II on August 30, 2001. After delivering the document, defendant Rodney Harvey requested to see the Evans children, including Plaintiff. Charles Evans II denied the request and reiterated his unwillingness to agree to validate any false claims of abuse against him. Charles Evans II spoke to defendant Donna Thoreson, a Contra Costa County Supervisory Social Worker, who indicated there was no possible resolution other than filing a petition with the Family Court within the next two weeks. No further contact or petition occurred prior to February 14, 2002.

11.     From January 29, 2002 to February 14, 2002 defendants Donna Thoreson and Rodney Harvey began to gather information and solicit the aid of other government employees to create a plan that would allow them to separate the children from the parents under the color of State law. At no time were the children in any danger of any sort except for the ill intentions of the defendants named in this Paragraph.

12.     On February 14, 2002, defendants Rodney Harvey and Stan Cooper received orders from their supervisors to unlawfully remove Teralyn, Henry, and Armae Evans from their residence and custody of their natural parents Charles Evans II and Nicole Lynnette Evans. This was the culmination of the conspiracy that began on January 29, 2002 designed for no other reason than to inflict their will upon the Plaintiff's family for their religious beliefs and assumed negative racial characteristics. No legal authority was sought or obtained to carry out this plan.

13.     After receiving instructions to remove the children, Teralyn, Henry, and Armae Evans, defendant Rodney Harvey contacted defendant Greg Gibson at the Richmond Police Department. Defendant Greg Gibson requested assistance from defendant Mark Gagan in order to remove the children, Teralyn, Henry, and Armae Evans from their home and to arrest Charles Evans II. Defendant Mark Gagan continued the plan by meeting with defendants Rodney Harvey and Stan Cooper at the Hall of Justice in the City of Richmond. During this meeting, the defendants signed documents placing the children under protective custody without court authority, probable cause, or exigent circumstance.

14.     At approximately 2:00 PM on February 14, 2002, defendants Mark Gagan, DOES 1-9, Rodney Harvey, and Stan Cooper entered the Plaintiff's family's residence, searched the entire premises, and removed the four Evans children, Teralyn, Henry, Armae, and infant Charles Thomas Evans. Defendant DOES 1-8 were large, armed, black male police officers; DOE 9 was an armed, white female police officer.

15.     After being removed from his home, Henry Maxwell Evans II was transported with his siblings to a clinic where he was given unauthorized medical attention and exams.

During this time, defendant Rodney Harvey attempted to bribe Henry with chocolate to 'stop crying, and be a big boy'.

16.    During the seizure of the children, Nicole Lynnette Evans was able to telephone her mother, Mrs. Lerline Gandy, who lived only seven minutes away. Mrs. Gandy, who is a well-respected, well-known resident of the city of Richmond, requested that the children be placed with her. Her request was denied with no consideration of her ability to meet the needs of the children until the matter could be resolved.

17.    Plaintiff Henry Maxwell Evans II, age 3, was placed into a home with his younger sister, Armae, and at least four other foster children of different ages. Defendant Rodney Harvey and his associates did not allow Henry to hear any sort of explanation of what was going on. Henry's foster guardian was welcoming, but didn't give any explanation of what was going on either. Although Henry felt at home being around other children, having games to play and TV to watch, he knew something was wrong because this wasn't his home. The first night of his stay, and the nights to come, Henry was not allowed to sleep in the same room as his sister, Armae, like the four siblings do at home. Instead, Henry had a roommate that took advantage of him on many occasions.

18.    During his time in the foster home, Henry was mistreated by his foster brother. Henry was sexually assaulted at least three times, and was forced to do his foster brother's chores like cleaning the bathroom, bedroom, and kitchen on a regular basis, and if he didn't, his foster brother would make up a lie to tell to get Henry in trouble. In the first instance, his foster brother purposefully made a mess with toys in the bedroom so that when Henry woke up he would get fussed at by his foster guardian; just to prove his control over the situations to come.

Given Henry's age, and the fact that he didn't speak too clearly, he wasn't taken seriously when he tried to prove his innocence. Although Henry wasn't physically disciplined for his foster brother's lies, he was mentally traumatized because there was nothing he could do to stop it. Henry became anti-social, he almost hardly saw his sister because the eldest foster sister seemed to have taken Armae under her wing, and he was still under the control of his foster brother. Even when Henry wanted to try to bring up this abuse to his foster guardian, his foster brother would quickly make a diversion and prevent Henry from telling.

19.     Henry only had contact with his parents Charles and Nicole Evans via telephone and at the county office. At one of those times, Henry was able to let his parents know the about the abuse that was occurring in his foster home. The time spent away from Henry's parents was damaging, both mentally and physically.

20.     On April 24, 2002, the Family Court granted the Plaintiff's parents' Motion to Dismiss Petition filed by the Children and Family Services Bureau.

21.     On or about July 19, 2002, the Deputy District Attorney issued a Decision Not To Issue Complaint against Charles Evans II stating that "Richmond Police Department developed not only a motive to lie by [Charlene Robertson and Winifred Beavers], but also evidence of injury [to Tyree Robertson] came from another source. Unfounded report of abuse".

23.     Each of the above paragraphs is incorporated by reference into each of the following causes of action.

## FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983)

(VIOLATIONS OF CIVIL RIGHT TO SECURITY IN PERSONS AND HOUSES)

24.     Defendants acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from his parents. These actions were committed with complete disregard for the constitutional provisions secured to all citizens of the United States, including the Plaintiff and his family.

25.     By removing Henry Maxwell Evans II from his residence without court authority, probable cause, or exigent circumstance, defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Rodney Harvey, Stan Cooper, Mark Gagan, DOES 1-9, and Greg Gibson, individually and/or while acting in concert with one another, violated the rights secured to the Plaintiff by the Fourth Amendment of the United States Constitution.

26.     By allowing defendants to act under color of law, policy, practice, or custom and to carry out and be exonerated or justified in such actions, defendants Contra Costa County and City of Richmond violated the rights secured by the Fourth Amendment of the United States Constitution.

Wherefore, plaintiff prays judgment as set forth herein.

## SECOND CLAIM FOR RELIEF

(42 U.S.C. § 1983)

(VIOLATIONS OF CIVIL RIGHT TO DUE PROCESS OF LAW)

27. Defendants acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from his parents. These actions were committed with complete disregard for the constitutional provisions secured to all United States Citizens, including the Plaintiff.

28. By removing Henry Maxwell Evans II from his residence without court authority, probable cause, or exigent circumstance, defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Rodney Harvey, Stan Cooper, Mark Gagan, DOES 1-9, and Greg Gibson, individually and/or while acting in concert with one another, violated the rights secured to the Plaintiff by the Fourteenth Amendment of the United States Constitution.

29. By allowing defendants to act under color of law, policy, practice, or custom and to carry out and be exonerated or justified in such actions, defendants Contra Costa County and City of Richmond violated the rights secured by the Fourteenth Amendment of the United States Constitution.

Wherefore, plaintiff prays judgment as set forth herein.

### THIRD CLAIM FOR RELIEF

(42 U.S.C. § 1981)

(VIOLATIONS OF CIVIL RIGHT TO EQUAL RIGHTS UNDER THE LAW)

30. Defendants acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from his parents. These actions were committed with complete disregard for the constitutional provisions secured to all United States citizens, including the Plaintiff.

31.     By committing the acts alleged in this Complaint, defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Clarence Johnson, and Rodney Harvey deprived the Plaintiff of her equal rights of, but not limited to, the following:

a.     The right to make and enforce contracts,

b.     The right to receive full and equal benefit of all laws,

c.     The right to protection from impairment of rights under color of State law.

Wherefore, plaintiff prays judgment as set forth herein.

### FOURTH CLAIM FOR RELIEF

(42 U.S.C. § 1985)

(CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS)

32.     Defendants Preston Gilmore, Savannah McKenzie, Melissa Connelly, Donna Thoreson, Rodney Harvey, Stan Cooper, Mark Gagan, and Greg Gibson acted under color of law in the planning, commission, and furtherance of the unlawful separation of the Plaintiff from his parents.

33.     The ill intention of the named defendants was the result of their willingness to accept and promote false information based on racial and religious characteristics of the Plaintiff's family. Despite the numerous attempts by the Plaintiff's family to cooperate, and their pleading with defendants to discontinue their actions, the defendants persisted with the alleged deprivations.

Wherefore, plaintiff prays judgment as set forth herein.

## FIFTH CLAIM FOR RELIEF

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

34.     By the conduct alleged above, the defendants intentionally or in reckless disregard of the consequences to the Plaintiff and the Plaintiff's family, proximately caused the Plaintiff's family to suffer great emotional distress and trauma by forcibly separating the Plaintiff's family unit.

35.     In doing the foregoing wrongful acts, the defendants, and each of them, acted in reckless and cruel disregard for the constitutional and statutory rights of the Plaintiff and the Plaintiff's family. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious.

Wherefore, plaintiff prays judgment as set forth herein.

## FIFTH CLAIM FOR RELIEF

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

36.     By the conduct alleged above, the defendants failed to provide the Plaintiff's family with the required benefits and provisions of California State law, Richmond Police Department's Standard Operating Procedures, and Department of Social Services Policies and Procedures. The Plaintiff and the Plaintiff's family suffered great emotional distress and trauma by the wrongful acts and omissions of the defendants.

37.     As a direct and proximate result of the negligence of the defendants, and each of them, the Plaintiff and the Plaintiff's family endured and will continue to endure the great injury to the mind and body caused by being stripped of protected rights by individuals entrusted to

protect them. The distrust and fear of living in an environment that justifies such activity is painful and ever present.

WHEREFORE, plaintiff prays judgment as set forth as follows on all causes of action:

A.   Compensatory general damages in the amount of forty million dollars ($40,000,000);

B.   Punitive damages in the amount of two million dollars ($2,000,000) for each defendant sued in their individual capacity;

C.   Injunctive Relief;

D.   Declaratory Relief and

E.   Such further relief that the Court deems just and proper.

### CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

38. Pursuant to General Order No. 48, the undersigned certifies that as of this date there is no such interest to report.

### JURY TRIAL DEMAND

39. Pursuant To Civil L.R. 3-6 plaintiffs preserve the right to a jury trial.

DATED May 5, 2017

Henry Maxwell Evans II
Plaintiff pro se

Complaint - 12